UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ROSWITHA RIENDEAU,                    :
        Plaintiff,                    :
                                      :
        v.                            :        CA 09-149 ML
                                      :
MICHAEL J. ASTRUE,                    :
COMMISSIONER OF                       :
SOCIAL SECURITY,                      :
        Defendant.                    :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

     This matter is before the Court on the request of Plaintiff
Roswitha Riendeau ("Plaintiff") for judicial review of the
decision of the Commissioner of Social Security ("the
Commissioner"), denying disability insurance benefits ("DIB") and
Supplemental Security Income ("SSI"), under §§ 205(g) and
1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§
405(g) and 1383(c)(3) ("the Act").  Plaintiff has filed a motion
to reverse the decision of the Commissioner.  See Plaintiff's
Motion to Reverse without or, Alternatively, with a Remand for a
Rehearing the Commissioner's Final Decision (Document ("Doc.")
#8) ("Motion to Reverse").  Defendant Michael J. Astrue
("Defendant") has filed a motion for an order affirming the
decision of the Commissioner.  See Defendant's Motion for an
Order Affirming the Decision of the Commissioner (Doc. #10)
("Motion to Affirm").

     This matter has been referred to me for preliminary review,
findings, and recommended disposition pursuant to 28 U.S.C. §
636(b)(1)(B).  For the reasons set forth herein, I find that the
Commissioner's determination that Plaintiff is not disabled is
supported by substantial evidence in the record and is legally

correct.  Accordingly, based on the following analysis, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.

## Facts and Travel

Plaintiff was born in 1946 and was fifty-nine years old as of her alleged onset date.  (Record ("R.") at 15, 127, 138, 166, 176)  She completed high school and two years of business school and has past relevant work as a nurse assistant and child care worker.  (R. at 15, 63)

Plaintiff filed applications for DIB and SSI on October 23, 2006, (R. at 7, 127-29), alleging disability since October 1, 2005, due to chronic depression and anxiety, (R. at 7, 74, 83, 142-43).  The applications were denied initially, (R. at 7, 68-69, 83-86), and on reconsideration by a Federal Reviewing Official ("FRO"), (R. at 7, 70-80), and Plaintiff requested a hearing before an administrative law judge ("ALJ"), (R. at 7, 91).  A hearing was held on September 30, 2008, at which Plaintiff, represented by counsel, appeared and testified, as did an impartial medical expert, Stuart Gitlow, M.D. (the "ME"), and an impartial vocational expert, Ruth Baruch (the "VE").  (R. at 7)  On October 23, 2008, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act.  (R. at 7-16)  The Decision Review Board selected Plaintiff's case for review, (R. at 4), and on January 26, 2009, affirmed the ALJ's decision, (R. at 1-3), thereby rendering that decision the final decision of the Commissioner, (R. at 1).  Plaintiff thereafter filed this action for judicial review.

## Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.

## Standard of Review

Pursuant to the statute governing review, the Court is
empowered "to enter, upon the pleadings and transcript of the
record, a judgment affirming, modifying, or reversing the
decision of the Commissioner of Social Security, with or without
remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The
Court's role in reviewing the Commissioner's decision is limited.
Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999).  Although
questions of law are reviewed *de novo*, the Commissioner's
findings of fact, if supported by substantial evidence in the
record,[1] are conclusive.  Id. (citing 42 U.S.C. § 405(g)).  The
determination of substantiality is based upon an evaluation of
the record as a whole.  Id. (citing Irlanda Ortiz v. Sec'y of
Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must
uphold the [Commissioner's] findings ... if a reasonable mind,
reviewing the evidence in the record as a whole, could accept it
as adequate to support his conclusion.")(second alteration in
original)).  The Court does not reinterpret the evidence or
otherwise substitute its own judgment for that of the
Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health &
Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "Indeed, the
resolution of conflicts in the evidence is for the Commissioner,
not the courts."  Id. at 31 (citing Rodriguez v. Sec'y of Health
& Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing
Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426
(1971))).

---

[1] The Supreme Court has defined substantial evidence as "more
than a mere scintilla.  It means such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion."
Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971)
(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct.
206, 217 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I.
1999)(quoting Richardson v. Perales, 402 U.S. at 401, 91 S.Ct. at
1427).

**Law**

To qualify for DIB, a claimant must meet certain insured status requirements,[2] be younger than 65 years of age, file an application for benefits, and be under a disability as defined by the Act.  See 42 U.S.C. § 423(a).  An individual is eligible to receive SSI if she is aged, blind, or disabled and meets certain income requirements.  See 42 U.S.C. § 1382(a).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. 423(d)(1)(A).  A claimant's impairment must be of such severity that she is unable to perform her previous work or any other kind of substantial gainful employment which exists in the national economy.  See 42 U.S.C. § 423(d)(2)(A).  "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[3]  20 C.F.R. §§ 404.1521(a), 416.921(a)

---

[2] The ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2008.  (R. at 8, 9)

[3] The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b) (2009).  Examples of these include:

    (1)  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
    (2)  Capacities for seeing, hearing, and speaking;
    (3)  Understanding, carrying out, and remembering simple instructions;
    (4)  Use of judgment;
    (5)  Responding appropriately to supervision, co-workers and usual work situations; and
    (6)  Dealing with changes in a routine work setting.

Id.

4

(2009).[4]  A claimant's complaints alone cannot provide a basis
for entitlement when they are not supported by medical evidence.
See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21
(1st Cir. 1986); 20 C.F.R. § 404.1529(a) (2009).

    The Social Security regulations prescribe a five step
inquiry for use in determining whether a claimant is disabled.
See 20 C.F.R. § 404.1520(a) (2009); see also Bowen v. Yuckert,
482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); Seavey v.
Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  Pursuant to that
scheme, the Commissioner must determine sequentially: (1) whether
the claimant is presently engaged in substantial gainful work
activity; (2) whether she has a severe impairment; (3) whether
her impairment meets or equals one of the Commissioner's listed
impairments; (4) whether she is able to perform her past relevant
work; and (5) whether she remains capable of performing any work
within the economy.  See 20 C.F.R. § 404.1520(b)-(g).  The
evaluation may be terminated at any step.  See Seavey v.
Barnhart, 276 F.3d at 4.  "The applicant has the burden of
production and proof at the first four steps of the process.  If
the applicant has met her burden at the first four steps, the
Commissioner then has the burden at Step 5 of coming forward with
evidence of specific jobs in the national economy that the
applicant can still perform."  Freeman v. Barnhart, 274 F.3d 606,
608 (1st Cir. 2001).

### ALJ's Decision

    Following the familiar sequential analysis, the ALJ in the
instant case made the following findings: that Plaintiff had not

---

[4] The Social Security Administration ("SSA") has promulgated
identical sets of regulations governing eligibility for Disability
Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").
See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120
n.1 (1st Cir. 1986).  For simplicity, the Court hereafter will cite
only to one set of regulations.  See id.

engaged in substantial gainful activity since October 1, 2005, the alleged onset of her disability,[5] (R. at 10); that Plaintiff's major depressive disorder and generalized anxiety disorder constituted severe impairments, (id.); that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, (id.); that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the nonexertional limitations of a moderate limitation in concentration, persistence, and pace such that she could understand, remember, and carry out simple one-to-four step tasks not involving independent judgment over an eight-hour workday with appropriate breaks and a moderate limitation in her ability to engage in social interactions which required an object- or material-focused job entailing only occasional work-related interactions with supervisors, coworkers, and the public, (R. at 11); that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the above RFC, (R. at 12); that Plaintiff was unable to perform any past relevant work, (R. at 15); that, considering her age, education, work experience, and RFC, Plaintiff was capable of performing jobs which existed in significant numbers in the national economy, (id.); and that Plaintiff had not been under a disability, as defined in the Act, from October 1, 2005, through the date of the ALJ's decision and, therefore, was not entitled to a period of disability or DIB or to SSI, (R. at 8, 16).

---

[5] The ALJ noted that Plaintiff had worked for a short period of time in 2006, which the ALJ stated was "consistent with an unsuccessful work attempt ...."  (R. at 10)

**Errors Claimed**

Plaintiff alleges that: (1) the ALJ erroneously evaluated Plaintiff's mental condition by failing to consider appropriately the opinions of Plaintiff's treating psychiatrist, treating psychologist, and examining psychiatrist; (2) the ALJ misunderstood the nature of Plaintiff's mental illness; (3) the ALJ had a duty to recontact Plaintiff's treating psychiatrist; and (4) the ALJ's credibility finding is inadequate.[6]

**Discussion**

**I.   The ALJ's Evaluation of Plaintiff's Mental Condition**

Plaintiff argues that substantial evidence does not support the ALJ's decision because she erroneously evaluated Plaintiff's mental condition in that she failed to find that Plaintiff's mental condition caused "moderately severe" deficits, see Plaintiff's Memorandum in Support of Plaintiff's Motion to Reverse without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision ("Plaintiff's Mem.") at 8, as opposed to the moderate limitations of Plaintiff's ability to maintain concentration, persistence, and pace and social interaction determined by the ALJ, (R. at

---

[6] In her reply memorandum, Plaintiff argues that the ALJ's RFC findings are inadequate. See Plaintiff's Response to Defendant's Motion to Affirm the Decision of the Commissioner of the Social Security Administration ("Plaintiff's Reply Mem.") at 3-4. However, this issue was not raised in Plaintiff's original brief. See Plaintiff's Memorandum in Support of Plaintiff's Motion to Reverse without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision ("Plaintiff's Mem.") at 2-17. Accordingly, the Court views this argument as waived. See United States v. Rivera-Rivera, 555 F.3d 277, 286 (1st Cir. 2009) ("arguments that make their debut in a reply brief are deemed waived"); United States v. Matchopatow, 259 F.3d 847, 851 (7th Cir. 2001)("It is well recognized that arguments not raised in the proceeding until the reply brief are waived."); accord Eberle v. City of Anaheim, 901 F.2d 814, 818 (9th Cir. 1990)("It is well established in this circuit that [t]he general rule is that appellants cannot raise a new issue for the first time in their reply briefs.") (alteration in original)(internal quotation marks omitted).

11).  Specifically, Plaintiff contends that the ALJ failed to
consider appropriately the opinions of Plaintiff's treating
psychiatrist, Penelope Yanni, M.D., treating psychologist John
Murphy, Psy.D., and consultative examining psychiatrist, Thamara
Davis, M.D., see Plaintiff's Mem. at 8-12, all of whom assessed
moderately severe to severe limitations in a number of areas of
functioning, (R. at 300-01, 324-25, 333-34, 349-50).

### A.    Drs. Yanni and Murphy

Plaintiff asserts that the ALJ failed to provide "'good
reasons' for the weight accorded to a treating physician's
opinion," Plaintiff's Mem. at 8 (citing 20 C.F.R. § 404.1527(d)
(2008); Social Security Ruling ("SSR") 96-5p), and failed to
evaluate the opinions of Plaintiff's treating sources in
accordance with the Commissioner's regulations, see id. at 8-9.
Plaintiff also argues that the opinions of Drs. Yanni and Murphy,
Plaintiff's treating psychiatrist and psychologist, respectively,
should have been accorded controlling weight.  See Plaintiff's
Mem. at 10, 11.

Evaluation of opinion evidence is governed by 20 C.F.R. §
404.1527.  Section 404.1527(d) provides in relevant part that:

> Generally, we give more weight to opinions from your
> treating sources, since these sources are likely to be
> the medical professionals most able to provide a
> detailed, longitudinal picture of your medical
> impairment(s) and may bring a unique perspective to the
> medical evidence that cannot be obtained from the
> objective medical findings alone or from reports of
> individual examinations, such as consultative
> examinations or brief hospitalizations.  If we find that
> a treating source's opinion on the issue(s) of the nature
> and severity of your impairment(s) is well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the other
> substantial evidence in your case record, we will give it
> controlling weight.  When we do not give the treating
> source's opinion controlling weight, we apply the factors
> listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this

> section, as well as the factors in paragraphs (d)(3)
> through (d)(6) of this section in determining the weight
> to give the opinion.  We will always give good reasons in
> our notice of determination or decision for the weight we
> give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2) (2009); see also SSR 96-2p, 1996 WL

374188, at *2 (S.S.A.)(listing requirements for giving

controlling weight to treating source's opinion); id. ("It is an

error to give an opinion controlling weight ... if it is not

well-supported by medically acceptable clinical and laboratory

techniques or if it is inconsistent with the other substantial

evidence in the case record.").  In evaluating medical opinions,

an ALJ is directed to consider the existence of an examining

relationship, the existence of a treating relationship, the

length, nature, and extent thereof, the supportability of an

opinion, the consistency of an opinion with the record as a

whole, the specialization of the source, and any other factors

which the claimant brings to the adjudicator's attention.  See 20

C.F.R. § 404.1527(d)(2)-(6).  Section 404.1527(e) further

provides that:

> Opinions on some issues, such as the examples that
> follow, are not medical opinions ... but are, instead,
> opinions on issues reserved to the Commissioner because
> they are administrative findings that are dispositive of
> a case; i.e., that would direct the determination or
> decision of disability.
>> (1) Opinions that you are disabled.  We are
>> responsible for making the determination or
>> decision about whether you meet the statutory
>> definition of disability.  In so doing, we review
>> all of the medical findings and other evidence that
>> support a medical source's statement that you are
>> disabled.  A statement by a medical source that you
>> are "disabled" or "unable to work" does not mean
>> that we will determine that you are disabled.
>
> ....

20 C.F.R. § 404.1527(e); see also Rodriquez v. Sec'y of Health &

<u>Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981)("[T]he resolution
of conflicts in the evidence and the determination of the
ultimate question of disability is for [the Commissioner], not
for the doctors or for the courts."); <u>cf.</u> SSR 96-5p, 1996 WL
374183, at *2 (S.S.A.)(noting that even "treating source opinions
on issues that are reserved to the Commissioner are never
entitled to controlling weight or special significance" because
that "would, in effect, confer upon the treating source the
authority to make the determination or decision about whether an
individual is under a disability, and thus would be an abdication
of the Commissioner's statutory responsibility to determine
whether an individual is disabled").

Regarding Drs. Yanni and Murphy, the ALJ stated that:

> Dr. Yanni has prepared more than one Supplemental
> Questionnaire as to Residual Functional Capacity in which
> she found that the claimant has "moderately severe"
> limitations in multiple areas of functioning, including
> the ability to respond appropriately to supervision,
> respond to customary work pressures, and perform complex
> and varied tasks.  Similarly, Dr. Murphy completed a
> Supplemental Questionnaire finding that the claimant had
> "moderately severe" limitations in all functional areas.
> The undersigned has considered these opinions, but they
> must be accorded little probative weight because they are
> inconsistent with the objective medical evidence. ...
> [T]he mental status examinations in the record, notably
> those performed by Dr. Yanni and Dr. Murphy, have
> resulted in findings that can, at most, be described as
> mild to moderate.  Therefore, the opinion that the
> claimant's functional limitations are "moderately severe"
> is found to be poorly supported.

(R. at 14)(internal citations omitted).  Thus, the ALJ accorded
the opinions "little probative weight" and not "controlling
weight" because she found them to be inconsistent with, and
unsupported by other, substantial evidence in the record.  (<u>Id.</u>);
<u>see also</u> SSR 96-2p, 1996 WL 374188, at *2; (R. at 12)("The
objective medical evidence does not support a finding that the

claimant has disabling functional limitations.").

It is clear from the foregoing passage that the ALJ considered the required factors.  She addressed the consistency of the opinions with the other evidence of record, <u>see</u> 20 C.F.R. § 404.1527(d)(4), and the supportability of the opinions, <u>see</u> 20 C.F.R. § 404.1527(d)(3).  Further, the ALJ was aware of the treating relationship Plaintiff had with Dr. Yanni and Dr. Murphy, <u>see</u> 20 C.F.R. § 404.1527(d)(2); <u>see also</u> (R. at 14)("In their initial assessments of the claimant at the beginning of her term of treatment, Dr. Yanni and Dr. Murphy both rated the claimant's global functioning with the score of 45 ...."), and their area of specialization, <u>see</u> 20 C.F.R. § 404.1527(d)(5); <u>see also</u> (R. at 13 (referring to Dr. Murphy as Plaintiff's "treating psychologist")).  The Court, therefore, finds that the ALJ evaluated the opinions of Drs. Yanni and Murphy in conformance with the applicable regulations.

Plaintiff challenges the ALJ's reliance on the two mental status examinations discussed in her decision because, according to Plaintiff, "[t]he ALJ fail[ed] to mention the numerous other mental status examinations that are not inconsistent with Dr. Yanni's opinion."  Plaintiff's Mem. at 9.  However, the ALJ clearly stated that "the mental status examinations in the record do not describe a marked level of dysfunction," (R. at 12), and that the two she discussed were "typical of the medical record throughout the relevant period,"[7] (<u>id.</u>).  Thus, the ALJ did not

---

[7] The ALJ's discussion of the mental status examinations reads as follows:

> **For example,** in January 2007, when examined by Dr. Murphy, the claimant was noted to have a depressed mood and a flat affect and to be anxious, but she had good eye contact and a cooperative attitude; her motor activity was normal; speech, language, and articulation were normal; she was alert and oriented in all three spheres; her thought content was unremarkable; her pattern of thought was linear and goal

base her determination of the weight to be accorded to the
opinions of Dr. Yanni and Dr. Murphy that Plaintiff was
"moderately severely" limited in most functional areas solely on
the two mental status examinations the ALJ described, but,
rather, used those mental status examinations as representative
of the mental status examinations in the record as a whole.  The
Court has read the entire record and finds that a reasonable mind
could have reached the same conclusion.  See Irlanda Ortiz v.
Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)
("We must uphold the [Commissioner's] findings ... if a
reasonable mind, reviewing the evidence in the record as a whole,
could accept it as adequate to support his conclusion.").

Moreover, the ALJ gave additional reasons for according
little probative weight to the opinions of Drs. Yanni and Murphy.
The ALJ observed that:

> In their initial assessments of the claimant at the
> beginning of her term of treatment, Dr. Yanni and Dr.
> Murphy both rated the claimant's global functioning with
> the score of 45.[8]   This score is consistent with

directed; her memory and judgment were intact; and she was
without cognitive deficit. More recently, in August 2008, when
the claimant met with Dr. Yanni, she had a depressed and
reactive mood and affect, but she appeared groomed; she had
good eye contact; she had a cooperative attitude; her motor
functioning was normal; her speech and language were normal;
her orientation and level of consciousness were intact; her
thought content was unremarkable; her thought pattern was
linear and goal-directed; she was without suicidal or
assaultive ideation; she was alert; and her judgment was
intact.  **These mental status examinations are typical of the
medical record throughout the relevant period.**

(R. at 12)(internal citations omitted)(bold added).

[8] The Global Assessment of Functioning ("GAF") "is a subjective
determination based on a scale of 100 to 1 of 'the clinician's
judgment of the individual's overall level of functioning.'"  Langley
v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004)(quoting
Diagnostic and Statistical Manual of Mental Disorders (Text Revision
4th ed. 2000) ("DSM-IV-TR") at 32).  The GAF "[c]onsider[s]

> "serious impairment in social, occupational, or school
> functioning." However, the undersigned notes that at the
> time of these assessments the claimant had not as yet
> reduced her consumption of alcohol. Therefore, her
> functioning was rated with her excessive use of alcohol
> factored in. ... [T]he claimant subsequently reduced and
> then eliminated her consumption of alcohol. Once she had
> done so, the GAF scores assigned by Dr. Murphy rose to
> 55, which is consistent with "moderate" symptoms.[9] The
> undersigned finds that the GAF score of 55 better
> represents the claimant's true level of mental
> functioning.

(R. at 14)(internal citations and footnote omitted). Plaintiff
makes no argument with respect to the ALJ's point regarding the
GAF scores. See Plaintiff's Mem. at 8-11.

The ALJ also noted that:

> Dr. Yanni and Dr. Murphy also completed Emotional
> Impairment Questionnaires in which they offer the opinion
> that the claimant "cannot sustain competitive employment
> on a full-time, ongoing basis." The undersigned finds
> that these statements are opinions on the subject of
> disability, which is properly reserved to the
> Commissioner. Accordingly, the undersigned gives no
> consideration to these opinions.[10]

---

psychological, social, and occupational functioning on a hypothetical
continuum of mental health-illness." DSM-IV-TR at 34. A GAF of 45 is
indicative of "**[s]erious symptoms** (e.g., suicidal ideation, severe
obsessional rituals, frequent shoplifting) **OR any serious impairment
in social, occupational, or school functioning** (e.g., no friends,
unable to keep a job)." Id.

[9] A GAF of 55 is consistent with "**[m]oderate symptoms** (e.g., flat
affect and circumstantial speech, occasional panic attacks) **OR
moderate difficulty in social, occupational, or school functioning**
(e.g., few friends, conflicts with peers or co-workers)." DSM-IV-TR
at 34.

[10] It bears noting that Dr. Yanni opined in the emotional
impairment questionnaire which she completed on May 5, 2008, that
Plaintiff's history of alcohol dependence was not contributory to her
disability because "the patient has been abstinent from alcohol since
7/10/07 and her severe depression + anxiety persisted." (R. at 336)
However, Dr. Yanni's own notes contradict the claimed period of
abstinence. On September 24, 2007, she recorded that Plaintiff had

(R. at 14)(internal citations omitted).  This, too, was proper under the governing regulations.  See 20 C.F.R. § 404.1527(e); see also SSR 96-5p, 1996 WL 374183, at *2.

Plaintiff additionally contends that Dr. Yanni's opinion that Plaintiff was moderately severely limited in most functional areas was consistent with Plaintiff's testimony at the September 30, 2008, hearing as well as the ME's testimony.  See Plaintiff's Mem. at 10.  However, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms not credible to the extent that they were inconsistent with the ALJ's RFC assessment.  The ALJ's credibility finding will be discussed in section IV. infra at 26-30.  With respect to the ME, Dr. Gitlow, Plaintiff cites his testimony that "physicians gain a feel, an intuition from seeing a patient and getting an impression based on education and clinical experience," Plaintiff's Mem. at 10; see also (R. at 49), and argues that "based upon Dr. Yanni's clinical observations of the claimant coupled with her clinical expeience, she is in a better position to offer an opinion of the claimant's level of functioning," Plaintiff's Mem. at 10.  Plaintiff overlooks Dr. Gitlow's testimony, in response to counsel's question regarding whether "Dr. Yanni does have this sort of clinical intuition based on her years of practice and her knowledge of the claimant," (R. at 52), that he "ha[d] [no] idea if Dr. Yanni just finished training or has been in practice for 30 years," (id.), and that Plaintiff would have no more than "mild to moderate difficulties with concentration, persistence[,] and pace, no

---

"[a] few beers when her brother was here.  One wine cooler since he has been gone."  (R. at 305)  Even later into the claimed period of abstinence, on November 14, 2007, Dr. Murphy noted that Plaintiff's "struggle with alcohol has been much better, although ... she is not completely abstinent of wine, cooks with wine, and will have an occasional glass."  (R. at 318)

difficulty with [activities of daily living], [and] no
difficulties with social functioning ...," (R. at 35).

Plaintiff makes a similar argument with regard to Dr.
Murphy, namely that his "opinions are also based upon his
clinical observations of the claimant coupled with his clinical
experience," Plaintiff's Mem. at 11.  Plaintiff also asserts that
Dr. Murphy's opinion that Plaintiff was moderately severely
limited in all areas of functioning "is entirely consistent with
the findings and opinions of treating psychiatrist, Dr. Yanni,
and examining psychiatrist, Dr. Davis," id., and, therefore his
assessment "is fully supported by the evidence," id.  Dr.
Murphy's assessment, however, is not consistent with those of
Clifford Gordon, Ed.D., who found Plaintiff to be no more than
moderately limited in any area, (R. at 263-64), and Chang-Wuk
Kang, M.D., who indicated that Plaintiff's ability to understand,
remember, and carry out instructions was not limited, (R. at
309), her ability to interact with the public was moderately
limited, (R. at 310), her ability to interact with supervisors
and co-workers was not limited at all, (id.), and her ability to
respond to usual work situations and changes in a routine work
setting was mildly limited, (id.).[11]  Such conflicts in the

---

[11] The First Circuit has recognized that the assessment of a non-
examining medical expert may, in some circumstances, constitute
substantial evidence.  See Berrios Lopez v. Sec'y of Health & Human
Servs., 951 F.2d 427, 431 (1st Cir. 1991)(citing Tremblay v. Sec'y of
Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982)(affirming the
Secretary's adoption of the findings of a non-testifying, non-
examining physician and permitting those findings to constitute
substantial evidence, in the face of a treating physician's conclusory
statement of disability)); see also Keating v. Sec'y of Health & Human
Servs., 848 F.2d 271, 275 n.1 (1st Cir. 1988)("It is within the
[Commissioner's] domain to give greater weight to the testimony and
reports of medical experts who are commissioned by the
[Commissioner].");  Social Security Ruling ("SSR") 96-6p, 1996 WL
374180, at *3 (S.S.A.)("In appropriate circumstances, opinions from
State agency medical and psychological consultants and other program
physicians and psychologists may be entitled to greater weight than

evidence are for the ALJ to resolve, not the Court.  See <u>Irlanda</u>
<u>Ortiz</u>, 955 F.2d at 769 ("[T]he resolution of conflicts in the
evidence is for the [Comissioner], not the courts.")(citing
<u>Rodriguez v. Sec'y of Health & Human Servs.</u>, 647 F.2d 218, 222
(1st Cir. 1981)); <u>see also</u> <u>Evangelista v. Sec'y of Health & Human</u>
<u>Servs.</u>, 826 F.2d 136, 141 (1st Cir. 1987)("Conflicts in the
evidence are, assuredly, for the [Commissioner]—rather than the
courts—to resolve.").

The Court finds that the ALJ's evaluation of the opinions of
Dr. Yanni and Dr. Murphy was proper.  The Court additionally
finds that the ALJ's determination to accord little probative
weight to those opinions is supported by substantial evidence in
the record.

**B.   Dr. Davis**

Plaintiff also challenges the weight given to the opinion of
examining psychiatrist Dr. Davis, arguing that said opinion
should have been accorded substantial weight.  <u>See</u> Plaintiff's
Mem. at 11-12.  In fact, in her reply memorandum, Plaintiff
asserts that "the ALJ's decision not to provide Dr. Davis's
independent, objective evaluation[] controlling weight cannot be
supported by substantial evidence."  Plaintiff's Response to
Defendant's Motion to Affirm the Decision of the Commissioner of
the Social Security Administration (Doc. #11) ("Plaintiff's Reply
Mem.") at 2-3.

As an initial matter, the Court notes that the ALJ correctly

---

the opinions of treating or examining sources.").  "State agency
medical and psychological consultants and other program physicians and
psychologists are highly qualified physicians and psychologists who
are also experts in Social Security disability evaluation."  20 C.F.R.
§ 404.1527(f)(2)(i) (2009); <u>see also</u> SSR 96-6p, 1996 WL 374180, at *2
("State agency medical and psychological consultants are highly
qualified physicians and psychologists who are experts in the
evaluation of the medical issues in disability claims under the
Act.").

declined to afford Dr. Davis' opinion controlling weight.
"Although opinions from other acceptable medical sources may be
entitled to great weight, and may even be entitled to more weight
than a treating source's opinion in appropriate circumstances,
opinions from sources other than treating sources can never be
entitled to 'controlling weight.'"   SSR 96-2p, 1996 WL 374188, at
*2 (S.S.A.).   There is no question that Dr. Davis was an
examining, not a treating, source.   (R. at 342)("I discussed with
the patient the nature of the relationship not being one of
psychiatric treatment.").

Regarding Dr. Davis, the ALJ stated that:

> Just prior to the hearing, the claimant's representative
> arranged for the claimant to undergo a psychiatric
> evaluation with Thamara Davis, M.D.  As might be expected
> from a report that was purchased by the claimant, the
> resulting evaluation was completely supportive of the
> claimant's application for disability.   The claimant
> informed Dr. Davis that she had ceased alcohol 2 years
> previously.   Dr. Davis wrote that the claimant had a
> severe level of limitation in activities of daily living
> and was incapable of fulfilling expectations of a
> competitive work environment.   In addition, Dr. Davis
> completed evaluation forms finding that the claimant had
> a listing-level mental impairment.  The undersigned finds
> that this evaluation has little value as an objective
> piece of medical evidence since it was obtained by the
> claimant with the clear intention of bolstering her claim
> for disability.  Moreover, the claimant was not entirely
> forthcoming with Dr. Davis, as her statement of
> abstinence for 2 years is inconsistent with the medical
> record, as she reported alcohol use as recently as
> September and November 2007.   For these reasons, the
> opinions of Dr. Davis are accorded little probative
> weight.

(R. at 14-15)(internal citation omitted).  In determining the
weight to be given to Dr. Davis' opinion, the ALJ properly took
into consideration the fact that she was not a treating physician
and that she only saw Plaintiff on a single occasion.  See 20
C.F.R. § 404.1527(d)(1), (2).

17

To the extent that Plaintiff contends that the Court should find error because the ALJ characterized Dr. Davis' opinion as having "little value as an objective piece of medical evidence since it was obtained by the claimant with the clear intention of bolstering her claim for disability," (R. at 14); see also Plaintiff's Mem. at 11, the Court is not so persuaded.  While "[s]omething more substantive than just the timing and impetus of medical reports obtained after a claim is filed must support an ALJ's decision to discredit them," Gonzalez Perez v. Sec'y of Health & Human Servs., 812 F.2d 747, 749 (1st Cir. 1987), an ALJ's decision "can still pass muster if the other reasons given to accord medical reports little weight are adequately supported," Arroyo v. Barnhart, 295 F.Supp.2d 214, 221 (D. Mass. 2003)(citing Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998); Gonzalez Perez, 812 F.2d at 749); see also Coggon v. Barnhart, 354 F.Supp.2d 40, 54 (D. Mass. 2005)(quoting Arroyo). Here, the ALJ offered another reason for affording Dr. Davis' opinion little probative weight.  The ALJ stated that "the claimant was not entirely forthcoming with Dr. Davis, as her statement of abstinence for 2 years is inconsistent with the medical record, as she reported alcohol use as recently as September and November 2007."  (R. at 14-15)  This statement is supported by the record.  (R. at 302)(office note from Dr. Yanni dated 6/21/07 reflecting Plaintiff's report of "1 drink three times when out with her son"); see also (R. at 305)(office note from Dr. Yanni dated 9/24/07 indicating Plaintiff's consumption of "[a] few beers while her brother was here.  One wine cooler since he left.").  Accordingly, because the ALJ's second reason for affording little probative weight to Dr. Davis' opinion is valid, the Court finds no error.

Plaintiff additionally contends that "Dr. Davis's opinion is also consistent with the opinions of treating physicians[] Dr.

Yanni and Dr. Murphy," Plaintiff's Mem. at 12, as well as with Dr. Gitlow's testimony that "there absolutely are times, both noted in the record and as one would expect, when the claimant was having severe impairment of overall functioning ...," id. The Court is unpersuaded.  Regarding the first statement, the Court has already found that the ALJ properly evaluated the opinions of Drs. Yanni and Murphy.  See Discussion section I.A. supra at 16.  As for the second statement, Plaintiff has taken it out of context.  Dr. Gitlow testified that "there are probably some times particularly after her son's death when she would be severely depressed for a period of time."  (R. at 58) Immediately thereafter, the exchange including the testimony to which Plaintiff refers occurred:

> Q    Um-hum.
>
> A    That would be normal.
>
> Q    Would that impact a rating of functioning?
>
> A    During that limited period, yes, and I was trying to say overall, there absolutely are times, both noted in the record and as one would expect, when the claimant was having severe impairment of overall functioning, but there would be no reason to expect it to last for greater than 12 months.

(Id.)  By definition, a disabling impairment is impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. 423(d)(1)(A).  Thus, the Court finds that Dr. Gitlow's statement provides no support for Plaintiff's contention that Dr. Davis' opinion should have been given more weight.

The Court finds no error in the ALJ's determination to afford Dr. Davis' opinion little probative weight.  Accordingly, I recommend that Plaintiff's first claim of error be rejected.

## II.  The ALJ's Understanding of the Nature of Plaintiff's Mental Illness

Plaintiff next asserts that "[t]he ALJ misunderstood the very nature of [Plaintiff]'s mental illness. ...  By the very definition of Major Depressive Disorder, Recurrent, an individual experiences waxing and waning of symptoms."  Plaintiff's Mem. at 12 (citing DSM IV-TR).  According to Plaintiff, "[t]he ALJ cited to the records that indicated some improvement but failed to address the records that show statis [sic] and deterioration, i.e., the waxing and waning or episodic nature of [Plaintiff]'s mental illness."  Id. at 13.

The ALJ recognized that Plaintiff "has alleged significant variability in her mood, and the medical evidence supports this allegation."  (R. at 12)  The ALJ, contrary to Plaintiff's suggestion, see Plaintiff's Mem. at 13, also noted that Plaintiff reported to Dr. Yanni having "some 'terrific' days **and some bad days ...**," (R. at 12)(bold added).  Thus, the ALJ clearly recognized the "episodic nature" of Plaintiff's mental illness.

The ALJ further recognized that Plaintiff has "significant functional difficulties," (R. at 15), as a result of her psychiatric conditions, (id.).  However, the ALJ concluded that "[t]he objective medical evidence does not support a finding that the claimant has disabling functional limitations."  (R. at 12)  Instead, the ALJ found that Plaintiff's "reports of improved functioning are prominent in the record."  (Id.)  The ALJ then, logically, proceeded to outline these "reports of improved functioning."  At the end of that summary, the ALJ noted that "[w]hile this is an incomplete picture, it does demonstrate that the claimant has experienced persistent if intermittent good functioning."  (R. at 13)

It can hardly be said that the ALJ failed to address the records which showed deterioration in Plaintiff's condition,

20

given that the ALJ discussed the evidence provided by Drs. Yanni,
Murphy, and Davis at length.  (R. at 14-15)  Moreover, the ALJ
summarized Plaintiff's testimony at the September 30, 2008,
hearing:

> At the hearing, the claimant testified that she was
> unable to work because she suffered from depression; she
> had days when she was unable to take care of herself or
> her home; she had tried to work but had been let go; she
> had no motivation for anything; during the day she sat on
> the couch, watched television, and didn't move much; she
> last had a drink in August 2008 when she had half a beer
> at her friend's cook-out; she used to love to read, but
> now she lacked the motivation; she did drive but only
> locally and only if she had to; she was afraid to go on
> the highway; she picked up food items at a convenience
> store and avoided going into large supermarkets; at the
> beginning of the summer she felt a little better and
> planted some flowers in her garden; she also spent time
> with friends at holiday time last year, but lately she
> had not been going out at all; **her moods varied from day
> to day**; on a bad day she would not dress or shower and
> would spend the day on the couch watching television; she
> had about three good days a month; she cut down her use
> of alcohol around the time she began receiving treatment
> with Dr. Yanni.

(R. at 11-12)(bold added).  While the ALJ did not find
Plaintiff's statements entirely credible, (R. at 12); see also
Discussion section IV. infra at 26-30, it is clear from the
foregoing that the ALJ considered Plaintiff's testimony regarding
her good and bad days.

In addition, the ALJ's rejection of the ME's assessment of
no difficulties in the areas of activities of daily living and
social functioning, (R. at 13), demonstrates her consideration of
the record as a whole, not just the portions which reflect
improvement in Plaintiff's condition.

> [D]espite Dr. Gitlow's assessment with respect to
> activities of daily living and social functioning, the
> undersigned finds that the claimant does have significant
> impairment in these areas.  The claimant's description of

21

> her frequent neglect of bathing and restricted range of
> daily activities, balanced against her accounts of her
> activities on "good" days, persuades the undersigned that
> she has a "moderate" restriction in activities of daily
> living.  Similarly, the claimant's frequently cited
> social isolation, despite some limited contact with
> family and friends, leads the undersigned to find that
> she has moderate difficulties in maintaining social
> functioning.

(R. at 13)

Based on the foregoing, the Court finds that the ALJ did not misunderstand the nature of Plaintiff's mental illness, nor did she fail to address evidence which demonstrated deterioration in Plaintiff's condition.  I therefore recommend that Plaintiff's second claim of error be rejected.

## III. The ALJ's Duty to Recontact Plaintiff's treating Psychiatrist

Plaintiff additionally argues that the ALJ had a duty to recontact Plaintiff's treating psychiatrist.  Plaintiff's Mem. at 14.  Plaintiff alleges that "the ALJ's affirmative duty to recontact the claimant's treating psychiatrist, Dr. Yanni[,] was triggered by Dr. Gitlow's testimony."  Id. at 15.

The First Circuit has stated that:

> In most instances, where appellant himself fails to
> establish a sufficient claim of disability, the
> [Commissioner] need proceed no further. Due to the non-
> adversarial nature of disability determination
> proceedings, however, the [Commissioner] has recognized
> that she has certain responsibilities with regard to the
> development of evidence and we believe this
> responsibility increases in cases where the appellant is
> unrepresented, where the claim itself seems on its face
> to be substantial, where there are gaps in the evidence
> necessary to reasoned evaluation of the claim, and where
> it is within the power of the administrative law judge,
> without undue effort, to see that the gaps are somewhat
> filled—as by ordering easily obtained further or more
> complete reports or requesting further assistance from a
> social worker or psychiatrist or key witness.

Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991)(quoting
Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594, 598
(1st Cir. 1980)); see also Mandziej v. Chater, 944 F.Supp. 121,
130 (1st Cir. 1996)(noting that reviewing court "must determine
whether the [allegedly] incomplete record reveals evidentiary
gaps which result in prejudice to the plaintiff" and that "[i]f
the ALJ fails to fill those evidentiary gaps, and if they
prejudice plaintiff's claim, remand is appropriate.")(internal
quotation marks omitted); cf. Currier, 612 F.2d at 598 (noting
that "we do not see such responsibilities arising in run of the
mill cases").  The regulation on which Plaintiff relies
states, in relevant part, that:

> (e) *Recontacting medical sources.*  When the evidence we
> receive from your treating physician or psychologist or
> other medical source **is inadequate for us to determine
> whether you are disabled,** we will need additional
> information to reach a determination or a decision.  To
> obtain the information, we will take the following
> actions.
>
> > (1) We will first recontact your treating physician
> > or psychologist or other medical source to
> > determine whether the additional information we
> > need is readily available.  We will seek additional
> > evidence or clarification from your medical source
> > when the report from your medical source contains a
> > conflict or ambiguity that must be resolved, the
> > report does not contain all the necessary
> > information, or does not appear to be based on
> > medically acceptable clinical and laboratory
> > diagnostic techniques.

20 C.F.R. § 404.1512(e)[12] (2009) (bold added); see also SSR 96-
5p, 1996 WL 374183, at *6 ("[I]f the evidence does not support a
treating source's opinion on any issue reserved to the

---

[12] Plaintiff cites to 20 C.F.R. § 416.912(e).  See Plaintiff's
Mem. at 15; see also n.4.

Commissioner and the adjudicator cannot ascertain the basis of
the opinion from the case record, the adjudicator must make
'every reasonable effort' to recontact the source for
clarifiation of the reasons for the opinion.").

As noted above, Plaintiff contends that the ALJ's duty to
recontact Dr. Yanni was "triggered" by the testimony of the ME,
Dr. Gitlow.

> Dr. Gitlow's testimony criticized the treatment
> techniques of the claimant's treating psychiatrist, Dr.
> Yanni.  Dr. Gitlow further testified that the treating
> phychiatrist's treatment was inadequate because she
> should have ordered lab work, explained in her treatment
> notes that she considered the prescription of Klonopin[,]
> and should have discontinued the prescription of Klonopin
> to assess the claimant's symptoms.  Most importantly, Dr.
> Gitlow testified that he could not assess the "B"
> criteria based upon the available medical records.[13]
> Therefore, the ALJ had an affirmative duty to recontact
> Dr. Yanni for clarification regarding her treatment
> because she offered her opinion regarding the claimant's
> inability to sustain full-time, competitive employment.

Plaintiff's Mem. at 15 (internal citations omitted).

It is true that the ME found Dr. Yanni's records lacking.
(R. at 33-35, 47, 52-53)  However, this does not mean that the
ALJ found that Dr. Yanni's records provided an inadequate basis
on which to make a decision.  See Landry v. Astrue, Civil Action
No. 06-30220-KPN, 2007 WL 4378161, at *5 (D. Mass. Dec. 7, 2007)
("As the Tenth Circuit has explained, 'it is not the rejection of

---

[13] Dr. Gitlow actually stated that he could not assess the "B"
criteria without factoring in Plaintiff's alcohol use or medication.
(R. at 36)  He did address the "B" criteria with Plaintiff's use of
alcohol being considered.  (R. at 35)  He testified that Plaintiff
"would not have had significant impairment during that period of
time," (id.), and that "[i]t would have been probably mild to moderate
difficulties with concentration, persistence[,] and pace, no difficulty
with [activities of daily living], no difficulties with social
functioning," (R. at 35-36).  He further noted that "[t]here were
obviously several episodes of decompensation secondary to the
alcohol."  (R. at 36)

the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the evidence the ALJ received from the claimant's treating physician that triggers the duty.'")(quoting White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001)).   "As a threshold matter, these regulations impose a duty to recontact a treating physician only when the record is inadequate to make a determination of disability."  Frost v. Barnhart, No. 03-215-P-H, 2004 WL 1529286, at *11 (D. Me. May 7, 2004).  Moreover, the Court of Appeals for the First Circuit has also stated that the claimant, "too, had an obligation.  She was required to produce all information supportive of her claim.  She was well represented by a paralegal under the supervision of an attorney, afforded ample opportunity to present her case, and did not indicate any desire to offer further evidence."  Shaw v. Sec'y of Health & Human Servs., 25 F.3d 1037, 1994 WL 251000, at *5 (1st Cir. June 9, 1994) (unpublished table opinion; text in Westlaw)(internal citation omitted).

Here, the ALJ developed "an adequate record from which a reasonable conclusion [could] be drawn,"[14] Heggarty, 947 F.2d at 997 (quoting Carrillo Marin v. Sec'y of Health, Educ. & Welfare, 758 F.2d 14, 17 (1st Cir. 1985)), which included treatment notes and questionnaires from Dr. Yanni, (R. at 289-306, 326-41).  The

---

[14] The record in the instant matter includes, *inter alia*, exhibits from Landmark Medical Center, (R. at 185-215); a report from Plaintiff's treating physician, (R. at 258-60); assessments from three Disability Determination Services ("DDS") non-examining sources, (R. at 263-80, 287-88, 308-11); treatment notes, three Emotional Impairment Questionnaires, and two Supplemental Questionnaires as to Residual Functional Capacity from Plaintiff's treating psychiatrist, (R. at 289-306, 326-41); treatment notes, an Emotional Impairment Questionnaire, and a Supplemental Questionnaire as to Residual Functional Capacity from Plaintiff's treating psychologist, (R. at 312-21); and a report from a consulting, examining psychiatrist, (R. at 342-63).

ALJ considered this evidence, along with the other opinion evidence, as demonstrated by the ALJ's summary of said evidence in her decision.  (R. at 10, 12-15)  At the September 30, 2008, hearing, Plaintiff was represented by counsel, (R. at 7, 17, 19-20), who stated her belief that the record was complete,[15] (R. at 20).  Thus, the Court concludes that there was no need for the ALJ to recontact Dr. Yanni to clarify her opinion regarding Plaintiff's inability to sustain full-time, competitive employment.  Plaintiff's Mem. at 15; see also Shaw, 1994 WL 251000, at *5 ("Under these circumstances, we see no prejudice in the ALJ's failure to recontact the doctor[].");  Landry, 2007 WL 4378161, at *5 ("Here, the ALJ appropriately believed that he had sufficient evidence upon which to rule.");  Cooper v. Barnhart, No. 04-222-P-S, 2005 WL 1231496, at *4 (D. Me. May 24, 2005) ("[T]he record contain[ed] sufficient evidence to allow the administrative law judge to make a determination regarding disability, so that the rejection of [the doctor's] opinion, if that is in fact what occurred, did not trigger the duty to recontact any physician.").

     The Court finds that the ALJ was not required to recontact Dr. Yanni based on Dr. Gitlow's questioning of her treatment of Plaintiff, because there was sufficient evidence on which the ALJ could base her ruling.  Thus, the Court recommends that Plaintiff's third claim of error be rejected.

**IV.  The ALJ's Credibility Finding**

     Finally, Plaintiff contends that the ALJ's credibility

_____

     [15] Counsel indicated that there were two late submissions, including treatment notes from Dr. Yanni and the consultative report from Dr. Davis.  (R. at 20-21)  These exhibits, numbered 23 and 24, (R. at 333-63), were made part of the record which was considered by the ALJ, (R. at 20)(noting at opening of hearing, prior to counsel's statement, that exhibits 1-22 would be admitted); see also Court Transcript Index.

finding was inadequate.  Plaintiff's Mem. at 16.  Specifically,
Plaintiff asserts that the ALJ's credibility finding is lacking
because she "did not ... provide any explicit credibility
rationale."  Plaintiff's Mem. at 16.

An ALJ is required to investigate "all avenues presented
that relate to subjective complaints ...."  Avery v. Sec'y of
Health & Human Servs., 797 F.2d 19, 28 (1st Cir. 1986).  In
addition, "whenever the individual's statements about the
intensity, persistence, or functionally limiting effects of pain
or other symptoms are not substantiated by objective medical
evidence, the adjudicator must make a finding on the credibility
of the individual's statements based on a consideration of the
entire case record."  SSR 96-7p, 1996 WL 374186, at *2 (S.S.A.).
When assessing the credibility of an individual's statements, the
ALJ must consider, in addition to the objective medical
evidence, the following factors:

1.    The individual's daily activities;
2.    The location, duration, frequency, and intensity of
      the individual's pain or other symptoms;
3.    Factors  that  precipitate  and  aggravate  the
      symptoms;
4.    The type, dosage, effectiveness, and side effects
      of any medication the individual takes or has taken
      to alleviate pain or other symptoms;
5.    Treatment, other than medication, the individual
      receives  or  has  received  for  relief  of  pain  or
      other symptoms;
6.    Any measures other than treatment the individual
      uses or has used to relieve pain or other symptoms
      (e.g., lying flat on his or her back, standing for
      15 to 20 minutes every hour, or sleeping on a
      board); and
7.    Any  other  factors  concerning  the  individual's
      functional limitations and restrictions due to pain
      or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3; see also Avery, 797 F.2d at 29
(listing factors relevant to symptoms, such as pain, to be

considered); 20 C.F.R. § 404.1529(c)(3) (2009) (same).  The ALJ's
credibility finding is generally entitled to deference,
especially when supported by specific findings.  <u>Frustaglia v.
Sec'y of Health & Human Servs.</u>, 829 F.2d 192, 195 (1st Cir. 1987)
(citing <u>DaRosa v. Sec'y of Health & Human Servs.</u>, 803 F.2d 24, 26
(1st Cir. 1986)); <u>see also</u> <u>Yongo v. INS</u>, 355 F.3d 27, 32 (1st Cir.
2004)("[T]he ALJ, like any fact-finder who hears the witnesses,
gets a lot of deference on credibility judgments."); <u>Suarez v.
Sec'y of Health & Human Servs.</u>, 740 F.2d 1 (1st Cir. 1984)
(stating that ALJ is "empowered to make credibility
determinations ..."); <u>cf.</u> <u>Becker v. Sec'y of Health & Human
Servs.</u>, 895 F.2d 34, 36 (1st Cir. 1990)("A reviewing court must
treat the agency's factual conclusions with considerable respect
....").

     The ALJ found that Plaintiff's medically determinable
impairments could reasonably be expected to cause her alleged
symptoms, but that her "statements concerning the intensity,
persistence[,] and limiting effects of these symptoms are not
credible to the extent they are inconsistent with the above
residual functional capacity assessment."  (R. at 12)  The ALJ
elaborated that:

> There are elements in the record that raise doubts about
> the credibility of the claimant's statements.  The
> claimant concealed her use of alcohol from her treating
> phychiatrist for a period of three years.[16]  In
> September 2006 the claimant was referred for substance
> abuse treatment but did not follow through with the
> referral.  Rather than embracing the idea of abstinence,
> the claimant told her treating psychologist in January
> 2007 that she had a goal of achieving controlled
> drinking, which may describe her pattern of alcohol use

---

[16] Elsewhere in her decision, as noted previously, <u>see</u> Discussion
section I.B. <u>supra</u> at 17, the ALJ stated that "the claimant was not
entirely forthcoming with Dr. Davis, as her statement of abstinence
for 2 years is inconsistent with the medical record ...," (R. at 14).

> in subsequent months.   Given these issues, the
> undersigned hesitates to take the claimant's statements
> entirely at face value.

(R. at 13-14)(internal citation omitted).  Thus, Plaintiff's
contention that the ALJ failed to provide an explicit rationale
for her credibility finding is erroneous.

Moreover, the reasons given by the ALJ for her credibility
finding are supported by the record.  A discharge summary from
Landmark Medical Center dated April 30, 2003, reflects that:

> [I]t became clear throughout the initial interview and
> then throughout several subsequent interviews that the
> patient has been a closet drinker at least for the past
> three years. ...  Up until three months ago she was able
> to work consistently, perhaps with the help of Xanax
> prescribed by her outpatient psychiatrist Dr. Bermon.
> Dr. Bermon was not aware of the patient's drinking as she
> did not tell him.

(R. at 211)  A phone screening form from NRI Community Services,
Inc., dated September 26, 2006, indicates that Plaintiff was
"referred to Butler Hospital Day Program [and] Tri-Hab women's
program[.]  She accepted the referrals[.]  (R. at 256)  However,
there is no evidence in the record that Plaintiff attended either
program.  Finally, Dr. Murphy, in his office note of January 17,
2007, recorded that Plaintiff "states that she has a goal of
controlled drinking, states that she does not wish to give up
alcohol completely."  (R. at 317)

The Court finds that the ALJ did not "simply ... recite the
factors that are described in the regulations for evaluating
symptoms," Plaintiff's Mem. at 16 (quoting SSR 96-7p, 1996 WL
374186, at *4), but, rather, provided an explicit rationale for
her credibility finding.  Moreover, Plaintiff was questioned at
the September 30, 2008, hearing regarding the required factors.
(R. at 23-29, 36-44); see also Frustaglia, 829 F.2d at 195 ("The
ALJ thoroughly questioned the claimant regarding his daily

29

activities, functional restrictions, medications, prior work record, and frequency and duration of the pain, in conformance with the guidelines set out in <u>Avery</u> regarding the evaluation of subjective symptoms.")(internal citation omitted).  Therefore, I recommend that Plaintiff's final claim of error be rejected.

### Summary

The Court finds that the ALJ's determination that Plaintiff was capable of performing a full range of work at all exertional levels, with the nonexertional limitations of a moderate limitation in concentration, persistence, and pace as well as in social interaction, is supported by substantial evidence in the record.  The Court further finds that the ALJ properly evaluated the opinions of Plaintiff's treating psychiatrist, treating psychologist, and examining psychologist; did not misunderstand the nature of Plaintiff's mental illness; was not required to recontact Dr. Yanni, Plaintiff's treating psychiatrist; and adequately evaluated Plaintiff's credibility.

### Conclusion

The Court finds that the ALJ's determination that Plaintiff is not disabled within the meaning of the Act is supported by substantial evidence in the record and is legally correct. Accordingly, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
March 12, 2010